456

ELROY C. SANDQUIST, JR., Ex'r of the Estate of Walter W. Smith, Deceased, Plaintiff-Appellant, *v.* GEORGE KEFALOPOULOS, Defendant-Appellee.

First District (1st Division)   No. 76-745

Opinion filed May 31, 1977.

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Elroy C. Sandquist, John P. Moe, Ernest W. Irons, and Ellen J. Kerschner, of counsel), for appellant.

Stern and Rotheiser, of Chicago (James M. Dupree, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Walter Smith, a pedestrian, was injured by an automobile driven by George Kefalopoulos (defendant). A jury returned a general verdict for Smith and awarded damages of $22,000. The jury also answered a special interrogatory, finding that defendant had been negligent. A second special interrogatory, on the question of Smith's contributory negligence, was returned unanswered and the jury was instructed to resume deliberation. A special finding was then returned that Smith had been contributorily negligent. The trial court set aside the general verdict and entered judgment for defendant in accord with the special finding. Smith appealed. Smith's counsel has suggested his death and this court has substituted Elroy C. Sandquist, Jr., executor, as plaintiff-appellant.

In this court, plaintiff contends that the special finding on contributory negligence is against the manifest weight of the evidence and further that there is no evidence of Smith's lack of due care so that he was free of contributory negligence as a matter of law. Plaintiff also urges that the

return of the general verdict and the inconsistent special finding at different times requires that a new trial be granted.

The scene of the occurrence was the intersection of Montrose Avenue, which runs east and west, and the north-south Albany Avenue. At this corner, Montrose is a through street with traffic lights two blocks to the east and the same distance to the west. There are stop signs for Albany traffic crossing Montrose. A liquor store is located on the northeast corner. The accident occurred between 6:30 and 7 p.m. on January 26, 1973. The streets were dry.

Smith testified that he drank a small beer in the liquor store and left after about 30 minutes. He walked to the curb at the corner crosswalk, stopped and looked east. He could see the stop light two blocks away and he saw no cars or car lights approaching from the east. He then looked west. He saw the traffic light two blocks distant but he testified that he did not see any cars coming and also that he saw no cars "close by" from that direction. When he looked in each direction, his vision was unobstructed. Smith then began to cross the street, looking south. He did not remember looking east or west again. He was struck by defendant's car, going west in the middle lane of Montrose. Before the impact he did not hear "motors running or brakes screeching or horns, or anything * * *." He also testified that there is a bus stop at the curb in front of the liquor store. He did not remember whether any cars were parked along the north curb of Montrose in that area. He was dressed in a dark coat and dark or black pants.

Defendant testified that he was driving west on Montrose at 6:30 p.m. with his headlights turned on. When he was a block from Albany, his speed was between 20 and 25 m.p.h. When defendant first saw Smith, he was 1½ car lengths or "a few feet" away and was "a little bit south of the cars * * *" parked on the north side of Montrose. Defendant braked and sounded the horn. When Smith was hit, he was in the crosswalk; defendant's car was "just stopping" and was traveling at about 2 m.p.h.

The passenger in defendant's vehicle, Kathy Koulouris, testified that the accident "happened so fast." Smith was standing, he walked out "[a]nd we just hit him all of a sudden."

Defense witness Hatzidiakos testified that he was driving his car east on Montrose. He saw Smith start to cross Montrose at Albany. Smith was walking in a southwestern direction, looking straight ahead. At the same time, the witness stopped his car less than 5 yards from Albany and saw the collision. He testified, "[Smith] put his feet in the street, you know. Then the car * * * hit him."

■■ The primary issue in this appeal is whether the trial court erred in setting aside the general verdict and rendering judgment in accordance with the special finding on Smith's contributory negligence. The Civil

Practice Act provides specifically that, "When the special finding of fact is inconsistent with the general verdict, the former controls the latter and the court may render judgment accordingly." (Ill. Rev. Stat. 1975, ch. 110, par. 65.) A reviewing court will not disturb a judgment entered upon the answer to a special interrogatory unless, as in the case of a general verdict, the finding was "palpably erroneous and wholly unwarranted from the manifest weight of the evidence." *Walters v. Taylor* (1976), 36 Ill. App. 3d 934, 939, 344 N.E.2d 765. See generally *Drzewiecki v. McCaskill* (1976), 41 Ill. App. 3d 627, 632, 354 N.E.2d 144; *Huston v. Chicago Transit Authority* (1976), 35 Ill. App. 3d 428, 431-32, 342 N.E.2d 190.

In the case before us, defendant was driving west with his headlights on. Smith may have looked to the east before entering the street, yet he testified that he neither saw nor heard an approaching car. According to the passenger in defendant's car and the motorist driving east, who offered the only testimony on the question, the collision occurred very shortly after Smith began to cross Montrose. An issue of fact thus arose as to whether Smith reasonably should have observed the imminent danger created by defendant's approaching automobile. Smith testified on direct examination that he saw no cars coming from the east or the west. On cross-examination he added that he saw no cars coming "close by" from the west. This testimony is questioned by that of the motorist that he was driving from the west and was near enough to the intersection to stop his car at Albany, where he saw the occurrence.

■■■ The presence of parked cars at the curb between Smith and defendant's vehicle cannot be overlooked on this issue. Smith looked straight ahead while walking into the westbound traffic lane without ever looking again for his own safety, although he must have known that his vision was obstructed. "[T]he law does not compel a pedestrian to constantly stare in the direction of oncoming traffic * * *." (*Jamison v. Lambke* (1974), 21 Ill. App. 3d 629, 634, 316 N.E.2d 93.) But, where a pedestrian looks once and his vision is obstructed, his failure to look again when he has passed the obstruction, and before he enters the possibly hazardous portion of the street is, in our opinion, sufficient to create a jury question as to whether he exercised due care for his own safety. (*Cf. Moran v. Gatz* (1945), 390 Ill. 478, 486, 62 N.E.2d 443.) Smith testified that his vision was "unobstructed." This may have been true in certain aspects as he could have seen the traffic signals which were at a higher level than an automobile. But, the undisputed presence of parked cars at the curb, which Smith could not remember, suggests that his vision of the dangerous area of the street was necessarily obstructed. The special finding was, in our opinion, amply supported by the record and was not contrary to the manifest weight of the evidence.

■■ The provision of the Illinois Vehicle Code that in the absence of

traffic control signals "the driver of a vehicle shall yield the right-of-way, * * * to a pedestrian crossing the roadway within a crosswalk * * *" (Ill. Rev. Stat. 1975, ch. 95½, par. 11—1002), cannot assist plaintiff. This statute does not absolve a pedestrian from the duty to use ordinary care for his own safety in crossing at the crosswalk. (See *Larson v. Fell* (1965), 55 Ill. App. 2d 418, 427, 204 N.E.2d 475, *appeal denied*, 31 Ill. 2d 631; *Vasic v. Chicago Transit Authority* (1961), 33 Ill. App. 2d 11, 11i-11j, 180 N.E.2d 347, and cases there discussed.) The critical point here is that the special interrogatory is supported by evidence that Smith was contributorily negligent in crossing the street.

This fact distinguishes the cases relied on by plaintiff: *Huston v. Chicago Transit Authority, Jamison v. Lambke,* and *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 253 N.E.2d 699. In each of them, the danger from the approaching vehicle was not reasonably apparent to the pedestrian before he or she entered the crosswalk. In these situations, no amount of additional looking at the street in the moment prior to crossing would have disclosed the presence of imminent danger. The distinction is also emphasized by *Walls v. Hofbauer* (1977), 45 Ill. App. 3d 394, 359 N.E.2d 1037, where this court reversed a judgment entered upon a special finding that plaintiff had been contributorily negligent. In *Walls*, plaintiff first looked both ways for oncoming traffic. Defendant's car was a substantial distance away when plaintiff entered the street. There was no evidence, as in the case before us, that plaintiff had walked into the path of defendant's automobile without looking again after he had reached a position from which his view was no longer obstructed.

From this decision that the special finding was not contrary to the manifest weight of the evidence, it follows logically that we cannot hold Smith free from contributory negligence as a matter of law.

■■ Plaintiff asserts that the trial court erred in submitting the special interrogatory to the jury. This argument was not raised in the post-trial motion; it is therefore waived. (Ill. Rev. Stat. 1975, ch. 110A, par. 366(b)(2)(iii); Ill. Rev. Stat. 1975, ch. 110, par. 68.1(2).) Even if the point were not waived, the trial court was required to submit the interrogatory at defendant's request. Smith's contributory negligence was a material question of ultimate fact. Ill. Rev. Stat. 1975, ch. 110, par. 65; *Estate of Constas v. Constas* (1976), 42 Ill. App. 3d 223, 227, 355 N.E.2d 683; *Drzewiecki v. McCaskill* (1976), 41 Ill. App. 3d 627, 632; *Green v. Brown* (1972), 8 Ill. App. 3d 638, 641-42, 291 N.E.2d 18, *appeal denied*, 53 Ill. 2d 605.

■■ Plaintiff contends that the special finding on the question of Smith's contributory negligence was the product of jury confusion. The jury returned its general verdict in favor of plaintiff and its special finding that defendant was negligent. The special interrogatory regarding

contributory negligence was left unsigned. The court informed the jury, "I am obliged to send this one question back to you in your jury room and I am required by law to ask you to mark it yes or * * * no." This direction was a correct statement of the law which provides that the jury "must be required * * * to find specially * * *" in response to the interrogatory. (Ill. Rev. Stat. 1975, ch. 110, par. 65. See also Ill. Ann. Stat., ch. 110, par. 65, Supplement to Historical and Practice Notes, at 84 (Smith-Hurd Supp. 1977).) The jury then deliberated and returned without further interruption with the interrogatory form completed.

*Kirby v. Swedberg*, the only authority cited by plaintiff, is simply not pertinent on this point.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

McGLOON and BUA, JJ., concur.